# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **BOARD OF TRUSTEES OF IRON** | ) | **CASE NO.  1:06CV764** |
| **WORKERS LOCAL UNION 17** | ) | |
| **PENSION FUND, et al.,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **DORTRONIC SERVICE, INC., d/b/a** | ) | |
| **ACTION DOOR COMPANY, et al.,** | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J**.:

This matter comes before the Court upon Plaintiffs' Motion (ECF DKT #40) for

Partial Summary Judgment, asking the Court to hold Defendant Employees, Daniel A.

Carson, Kenneth G. Monaco, and Charles H. Simpson, are estopped from claiming any

pension credit for the years 1999-2005 in excess of the amounts shown on their pension credit

statements for those years.  For the reasons that follow, the motion is granted.

## I. FACTUAL BACKGROUND

This case was originally filed by the Board of Trustees of the Pension Fund and other

Union benefit funds to collect contributions due to the Funds by Action Door for the years

1999-2005 pursuant to Sections 502(a)(3), (d)(1) and (g)(2) and 515 of the Employee

Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3),

(d)(1) and (g)(2) and 1145, and Section 301 of the Labor Management Relations Act of 1947,

as amended ("LMRA"), 29 U.S.C. § 185.  On June 13, 2007, the Complaint was amended to

add Defendant Employees, Daniel A. Carson, Kenneth G. Monaco and Charles H. Simpson.

Defendant Employee Carson was employed by Action Door from 2001 through 2005; Defendant Employee Simpson was employed by Action Door from 1982 through 2005; and Defendant Employee Monaco was employed by Action Door from 1988 through 2005.  These Defendant Employees left Action Door specifically for the purpose of forming a separate entity  – C & S Door  –  to become signatory to a Collective Bargaining Agreement ("CBA") with the Union and perform work on Union jobs that might otherwise have been performed by Action Door.

Up until the time the Defendant Employees left, Action Door was a signatory to a CBA with the Union; and was required to pay dues to the Union and make contributions to the Pension and other benefit funds on behalf of the employees for all hours of work performed that was considered "covered work" under the CBA.  On January 22, 2007, the Court entered an Order, at the joint request of the Plaintiff Funds and Defendant Action Door, making the judicial determination that only rolling shutters work would constitute "covered work" for purposes of pension fund credit.

Action Door was required to provide the Pension Fund with a monthly contribution report setting forth the number of covered hours each employee worked that month.  The amount of covered hours worked forms part of the basis for determining the amount of pension benefits an employee receives at retirement.  The Pension Fund sent pension credit statements to each of the Defendant Employees, at least annually, showing the number of hours the participant's employer reported on the contribution reports and paid to the Pension Fund on behalf of the participant during the time period covered by the pension credit statement.  (Affidavit of Edward Fox, Administrator of Iron Workers Local Union No. 17

-2-

Pension Fund, ECF DKT #40-2).  Each pension credit statement contains the following

instructions in capital letters:

> PLEASE REVIEW THIS PENSION CREDIT STATEMENT.  IF YOUR RECORDS
>
> DIFFER FROM WHAT IS SHOWN, PLEASE CONTACT THE FUND OFFICE IN
>
> WRITING.

None of the Defendant Employees notified the Pension Fund of any inaccuracies during the

years 1999-2005.

Accordingly, the Funds move for Partial Summary Judgment in their favor, asking the

Court to find Defendant Employees are estopped from claiming benefits for those years based

on hours in excess of those reported on the pension credit statements.  In support, the Pension

Fund submits the Affidavit of Administrator Fox, an example copy of a pension credit

statement sent to Carson in 2004, and printouts of contributions made to the Pension Fund on

the Defendant Employees' behalf.  Defendant Action Door joins in Plaintiffs' request for a

judgment of equitable estoppel, and submits the Affidavit (ECF DKT #41-2) of Michael

Wittwer, President of Dortronic Service, Inc. d/b/a Action Door.  Defendant Employees have

filed their Joint Memorandum in Opposition, accompanied by their own Affidavits.  (ECF

DKT #42).  Each avers, during his term of employment with Action Door, he performed some

Union jobs which were "covered work" and some non-Union jobs which were not.  Further,

each asserts he was not responsible for knowing the type of work that was "covered work"

under the CBA; was not required to keep track of the hours worked; was not required to keep

records distinguishing between hours performing "covered work" and hours performing work

which was not "covered work," and left Action Door because Action Door lost its status as

signatory to a contract with the Union.

## II. LAW AND ANALYSIS

### Standard of Review

### Motion for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). When deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushito Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Any direct evidence offered by the Plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the

-4-

nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323; *Lee*, 2005 WL 3369616 at *2. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**<u>Equitable Estoppel</u>**

The doctrine of equitable estoppel is comprised of five elements: (1) the party to be estopped made a representation of material fact through its conduct or language; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended the other party to act upon the representation; (4) the party seeking estoppel was unaware of the true facts; and (5) the party seeking estoppel justifiably and detrimentally relied on the representation. *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991).

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (quoting *Heckler v. Community Health Servs.*, 467 U.S. 51, 59 (1984)). It is a "flexible doctrine that seeks to balance the equities in particular cases." *Valentine-Johnson v. Roche*, 386 F.3d 800, 812 (6th Cir. 2004) (citing *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30-31 (1st Cir. 2004)).

The Court recognizes Defendant Employees' argument that district courts in the Sixth Circuit have found the equitable estoppel theory unavailable in actions concerning ERISA

Pension Plans.  That prohibition exists where plan participants attempt to use equitable estoppel to modify written plan terms.  See *Richards v. General Motors Corp.*, 876 F. Supp. 1492 (E.D. Mich. 1995); *Steadman v. Bd. of Trustees of Building Material Drivers Local 436 Pension Fund*, No. 1:04CV2420, 2006 WL 305311 at *9 (N.D. Ohio, Feb. 8, 2006).  Just the opposite situation faces this Court.  This action does not involve a claim by plan participants nor an effort to modify pension plan language.  Rather, the Funds are attempting to protect their financial position and perform their fiduciary obligations.  The rationale for disallowing equitable estoppel is not applicable to these facts.

1.  Representation of a Material Fact

According to the Affidavit of the Pension Fund Administrator, Edward Fox, pension credit statements were mailed to each participant  –  at first on a quarterly basis, and later, annually.  (Fox Affidavit, ECF DKT #40-2).  Each statement showed the hours reported by the employer for which pension contributions were paid; and included, in capital letters, instructions to review the statement and notify the Fund in writing if a participant's record of hours worked differed from the Fund's.  In their Affidavits, Defendant Employees do not dispute receiving these regular statements from the Pension Fund.  Yet, "[n]either Mr. Simpson, nor Mr. Carson nor Mr. Monaco ever informed the Pension Fund office in writing that the amounts on any of their pension credit statements were incorrect."  (Fox Affidavit ¶ 8, ECF DKT #40-2).  Silence can constitute a representation.  *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1493 (6th Cir. 1991).  Defendant Employees' silence was a representation that no discrepancies existed.  (Note: The Court is not persuaded by Defendant Employees' overly literal interpretation of the highlighted portion of the pension

-6-

credit statement.  That is, they were required to maintain records of the hours worked and the type of work performed.  A commonsense reading of the language suggests the plan participant, upon receiving the notice, should take the opportunity to review the data, compare it to his recollection or to his pay stubs, and report any discrepancies in writing.)

2.  Knowledge of the true facts

As a practical matter, having actually performed the work, Defendant Employees were in the best position to determine the accuracy of the amount of hours reported on the pension credit statement.  In some instances, for example, zero hours of covered work were reported for an employee for a one-year period.  The accuracy of that figure would more likely be in the employee's possession than in the Fund's.

3.  Intended result

In their own recitation of the facts, and in their Affidavits, Defendant Employees admit the pension calculation is based, in part, on the hours reported by the employer to the Pension Fund.  (ECF DKT #42, p.6 and attached exhibits).  By remaining silent on the figures provided to them in their pension credit statements, Defendant Employees would necessarily have expected the Pension Fund to accept those hours of covered work performed.

4.  Lack of awareness of true facts

The Pension Fund possesses no independent knowledge of the amount of covered hours worked in a given year.  The Fund depends, first, upon the employer's contribution reports.  (Fox Affidavit ¶ 4, ECF DKT #40-2).  Those figures are cross-checked by the plan participants upon receipt of their pension credit statements.  (Id. at ¶ 5).  Certainly, an audit by the Fund offers a dependable calculation of the work performed, the hours reported, and

the contributions paid.  However, because the Pension Fund administers contributions from a number of employers, it is impractical and expensive to utilize the audit process yearly.  Until the Fund performed its audit of Action Door in 2005, it had no reason to question the figures provided by Action Door, and undisputed by Defendant Employees.

In their Memorandum in Opposition, Defendant Employees suggest Union Local No. 17 knew they were performing covered work.  (ECF DKT #42, p.21).  Even if this were a fact in evidence, which it is not, the Union Local and the Pension Fund are distinct entities.  The Court will not impute knowledge between entities which are discretely independent, and which have not been shown to be "alter egos" of each other.

5.  Justifiable reliance

"To ensure that the employers are submitting the proper contribution amounts and reporting the correct number of hours on the contribution reports, the Pension Fund mails pension credit statements to each participant."  (Fox Affidavit ¶ 5, ECF DKT  #40-2,).  The Court agrees with the Funds that it would be in the Defendant Employees' best interest to notify the Fund office of any discrepancies in the hours and work reported for pension purposes.  Therefore, reliance by the Funds on Defendant Employees' silence was reasonable.

Moreover, it would be prohibitively expensive to annually audit every employer contributing to the Pension Fund.  Had problems been identified, an audit probably would have been done earlier than 2005.  The fact that the 2005 audit revealed underreporting by Action Door does not mean the Pension Fund was negligent in relying on the "checks and balances" of the reports and statements before that time.  The Funds relied on Defendant

-8-

Employees' silence to their detriment. Had Defendant Employees alerted the Funds to possible discrepancies earlier, the delinquency to be recovered might have been in a more manageable amount, or a lawsuit might have been averted all together.

In sum, Defendant Employees, Carson, Monaco, and Simpson, have not met their burden of designating specific facts or evidence in dispute with regard to the application of equitable estoppel. Their Affidavits only generally describe the nature of their work while employed with Action Door. Their Affidavits do not claim they never received the pension credit statements sent by the Pension Fund. None avers written notification of a discrepancy was ever mailed to the Fund office. Even at this late date, the Affidavits do not contain evidence of hours spent performing "covered work," which differs from the amounts reflected in the Pension Fund's records. Thus, Defendant Employees have failed to demonstrate why the balance of the equities should tip in their favor.

### III. CONCLUSION

Based upon the foregoing, Plaintiffs' Motion (ECF DKT #40) for Partial Summary Judgment is granted; and Defendant Employees, Daniel A. Carson, Kenneth G. Monaco, and Charles H. Simpson, are estopped from claiming any pension credit for the years 1999-2005 in excess of the amounts shown on their pension credit statements for those years.

**IT IS SO ORDERED.**

**DATE: 9/30/08**

> **S/Christopher A. Boyko**
> **CHRISTOPHER A. BOYKO**
> **United States District Judge**